**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAWNDELL L. JAMES,<br><br>         Petitioner,<br><br>   v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>         Defendant. | No.   1:23-cv-00842-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## I.    INTRODUCTION

Plaintiff Shawndell James ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    BACKGROUND

Plaintiff was born on January 17, 1970. (Administrative Record ("AR") 394). She filed

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 10).

the relevant claim for DIB on February 6, 2020, alleging a disability onset date of October 24, 2012. (AR 358). In her application, she alleged disability based on her "neck & shoulder injury, lower back pain, left knee problems, migraines, insomnia, depression/panic attacks, loss of hearing in both eras, chest pain, head trauma & schizophrenia and memory loss." (AR 373). Plaintiff has completed one year of college, and she was previously as an assistant manager and a restaurant manager. (AR 374-75).

**A.    Relevant Evidence of Record**[2]

    **1.    Medical Evidence**

Plaintiff has received treatment for neck, back and shoulder pain. Various MRIs and other imaging have showed generative disk disease from C5-C7 (AR 476; 515-16; 521) and in her lumbar spine. She has received epidural steroid injections (AR 523), trigger point injections (AR 513), and a bilateral cervical medial branch block (AR 583) to manage her pain. Doctors have also suggested she may be a candidate for a cervical radiofrequency ablation (AR 523), and she has been referred to a neurosurgical consultation for her pain. (AR 526). Some providers have diagnosed Plaintiff with radiculopathy of the cervical region and small fiber neuropathy. (*See, e.g.*, AR 910). Plaintiff manages her back pain with an opiate, analgesic. (AR 512-30). Plaintiff has also received treatment for various mental health conditions, including depression (AR 698) and bipolar disorder (AR 482).

    **2.    Opinion Evidence**

On October 17, 2020, Ekram Michiel, M.D., performed a psychological consultative exam. (AR 877). During the examination, Plaintiff reported her mood as "depressed." (AR 878). Plaintiff stated that she felt hopeless and that "I feel like people are watching me and the fear of being watched makes me always nervous, expecting something bad to happen." (AR 888). He noted that her thought process had "frequent blocking and halting." (AR 879). He noted she was able to recall three out of three items immediately when testing her immediate recall, and one after five minutes. (AR 879). She was unable to recall what she ate at her last meal and she could recall when she received her high school diploma. (AR 879). Plaintiff stated the names of the current

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

and two former presidents as "Trump, Obama and Clinton." (AR 879). Dr. Michiel concluded that the Plaintiff "is unable to maintain attention and concentration to carry out simple job instructions. If the [Plaintiff] chooses to work, it will be difficult for her to relate to coworkers, supervisors and the general public due to her constant feeling that she is being watched." (AR 880).

Daniel Moore, PAC, completed a medical source statement on February 11, 2021. Mr. Moore treated Plaintiff throughout the relevant period for her depression. (*See, e.g.*, 1001). Mr. Moore opined that Plaintiff had marked to extreme limitations in concentration and memory and marked limitation in understanding and memory. (AR 889.) Mr. Moore also stated that Plaintiff's impairments or treatments would require she be absent more than four days per month. (AR 899).

### 3. Plaintiff's Testimony

At the hearing, Plaintiff testified she lives with her minor child and a roommate. (AR 46). She reported chronic pain, as well as anxiety, depression, and panic attacks. (AR 59). She reported walking with a cane and that she was prescribed a walker in 2021. (AR 62). She stated she has back and neck spasms daily that last 20 or 30 minutes, and medication largely does not help. (AR 64). She testified her daughter helps her with daily tasks, such as bathing and dressing. (AR 65).

### B. The ALJ's Decision

Plaintiff filed her first claim for DIB on July 29, 2015, alleging a disability onset date of October 24, 2012. (AR 81). The Commissioner denied Plaintiff's application initially on March 29, 2016. (AR 81). Plaintiff requested a telephonic hearing before an Administrative Law Judge (an "ALJ"), and the parties attended a hearing on December 7, 2017. (AR 81). In a decision dated May 16, 2018, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 81-92).

Plaintiff filed the instant claim for DIB on February 6, 2020. (AR 19). The Commissioner denied Plaintiff's application initially on April 20, 2020, and again upon reconsideration on June 25, 2020. (AR 139-10; AR 180-81). Plaintiff requested a telephonic hearing before an ALJ, and the parties attended a hearing on October 28, 2021. (AR 43). During the hearing, Plaintiff amended her alleged onset date to May 17, 2018. (AR 43). Plaintiff was represented by counsel. (AR 19). Michelle Aliff, an impartial vocational expert, also testified at the hearing. (AR 19). In a decision

dated November 26, 2021, the ALJ found that Plaintiff was not disabled as defined by the Act. (AR 24-33).

First, the ALJ found Plaintiff had rebutted the presumption of non-disability and shown "changed circumstances" based on two years of additional treatment after Plaintiff's initial claim was denied in 2018. (AR 22). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 17, 2018 (step one). (AR 23). At step two, the ALJ found that Plaintiff suffers from the following severe impairment: degenerative disk disease (20 CFR 404.1520(c) and 416.920(c)). (AR 23). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 25).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found Plaintiff perform the following:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch or crawl. The claimant can frequently reach overhead, bilaterally. She must avoid frequent exposure to extreme cold and must avoid frequent exposure to excessive vibration.

(AR 26). At steps four, the ALJ found that Plaintiff could perform past relevant work as a restaurant manager and department manager, as this work does not requirement activities precluded by Plaintiff's RFC. (AR 29). In addition to Plaintiff's previous work, the ALJ made alternate findings at step five that considering her age, education, work experience and RFC, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 30).

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ based this finding on the testimony of the Vocational Expert ("VE"), who testified Plaintiff could perform the following jobs: Bench Assembler (Dictionary of Occupational Titles ("DOT") 706.684-022); and Cleaner (DOT 323.687-014) (AR 31). The ALJ concluded Plaintiff was not disabled under the Social Security Act. (AR 31).

Plaintiff sought review of this decision before the Appeals Council, which denied review on December 13, 2022. (AR 5). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.   LEGAL STANDARDS

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the

claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g., Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*,

143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ's RFC determination is not supported by substantial evidence because the ALJ (1) failed to complete the record and obtain an opinion of Plaintiff's physical RFC from an examining physician; (2) failed to find Plaintiff's mental impairments severe at Step 2 and did not include any limitations in the RFC reflective of Plaintiff's limitations related to her mental impairments; and (3) failed to offer clear and convincing reasons to discount Plaintiff's subjective complaints.  The Court concludes the ALJ did not err in any of these respects.

**A.    The ALJ Adequately Developed the Record**

    **1.    Legal Standard**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (1996); *see also* 20 C.F.R. § 416.945(a).  It reflects the most that a claimant can do despite their limitations.  SSR 96-8p, 1996 WL 374184, at *1.  In formulating the RFC, the ALJ must account for all the claimant's medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's limitations

is defective"). Therefore, an ALJ errs when they provide an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-2 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. § 416.946. The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (citing *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998)). The ALJ's RFC assessment should be affirmed if the ALJ has applied the proper legal standard and their decision is supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Claimants carry the burden to prove they are disabled. 20 C.F.R. § 404.1512(a). However, "Social Security proceedings are inquisitorial rather than adversarial." *Schiaffino v. Saul*, 799 Fed. App'x 473, 476 (9th Cir. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 111–12 (2000)). An ALJ has a responsibility to develop a "complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). "The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

> The ALJ is not a mere umpire at such a proceeding . . . . it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.

*Id.* (quoting *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)). However, the duty to develop the record further is only triggered when there is ambiguous evidence, or the record does not allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

The ALJ's duty to develop the record fully is heightened when a claimant is mentally ill and unable to protect his or her own interests. *Id.* However, if the record includes "specific and sufficient" evidence to evaluate a claim, the record is neither ambiguous nor inadequate. *Gurin v. Saul*, 842 F. App'x 45, 48 (9th Cir. 2021). An ALJ may discharge their duty by subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 242 F.3d at 1150.

### 2. Analysis

Plaintiff's arguments suggesting the ALJ failed to develop the record adequately are perplexing. First, Plaintiff contends the ALJ did not have the opinion of "any physical regarding Plaintiff's physical conditions that relate to her current level of functioning in light of the determination he made regarding *Chavez*. Rather, the state agency consultants completed the determinations utilizing the *Chavez* standard, which does not result in an updated discussion of Plaintiff's limitations." (Doc. 14 at 12). Plaintiff appears to be referencing *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). In *Chavez*, the Ninth Circuit held that that "principles of res judicata apply to administrative decisions regarding disability and impose an obligation on the claimant, in instances where a prior ALJ has made a finding of non-disability, to come forward with evidence of 'changed circumstances' in order to overcome a presumption of continuing non-disability." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (quoting *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988)).

Both consultative examiners, however, reviewed evidence of Plaintiff's condition from after the previous decision and found the previous ALJ's RFC still applied. Roger Fast, M.D. completed a consultative examination on April 16, 2020. (AR 108). Dr. Fast specifically noted there were new allegations to consider from after the previous ALJ decision, and therefore, *Chavez* presumption did not apply. (*See* AR 110). Dr. Fast then reviewed various records from 2018 through 2020 (*see* AR 120-24). The ALJ also reviewed Plaintiff's subsequent treatment history and found the previous ALJ's RFC was still appropriate. (AR 111). On reconsideration, J. Linder, M.D., also found a review of the new evidence supported an adoption of the previous ALJ's RFC. (*See* AR 146-48) (reviewing evidence from 2018-2020).

To the extent Plaintiff contends the RFC must mirror a specific medical opinion, this is incorrect. The ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). An ALJ does not commit legal error when the ALJ assesses an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)). Plaintiff denies that she has argued that the ALJ must mirror a specific medical opinion, and claims she is contending instead, that "[c]ase law is well-established in stating that the ALJ is not a medical professional and, as a lay person, is unable to interpret medical records." (Doc. 17 at 2). Plaintiff does not identify any medical records or other "raw medical data" that the ALJ inappropriately interpreted. Nor has Plaintiff identified what ambiguous evidence triggered the ALJ's duty to develop the record further. *Tonapetyan*, 242 F.3d at 1150.

Plaintiff also fails to identify any records unaccounted for in the ALJ's RFC assessment and she does not otherwise show any inconsistency between this evidence and her RFC. In short, the Court does not find error in a failure to develop the record. Plaintiff may disagree with the RFC, but the Court must uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**B.     The ALJ Did Not Err at Step Two**

   **1.     Legal Standard**

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)). "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and TITLES II & XVI: THE SEQUENTIAL EVALUATION PROCESS, Social Security Ruling ("SSR") 86-8 (S.S.A. 1986)).

"'[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities.'" *Smolen*, 80 F.3d at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)). "[B]asic work activities are the abilities and aptitudes necessary to do most jobs." TITLES II & XVI: MED. IMPAIRMENTS THAT ARE NOT SEVERE, SSR 85-28 (S.S.A. 1985). Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding that the claimant "failed to meet his burden of establishing disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85–28. "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Webb*, 433 F.3d at 687 (alteration in original) (quoting SSR 85–28).

Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at

11

1290 (citing *Yuckert*, 482 U.S. at 153–54). "Nonetheless, '[t]he plaintiff has the burden of establishing the severity of the impairment.'" *Jennings v. Kijakazi*, No. 1:20–cv–01180–SKO, 2022 WL 209239, at *8 (E.D. Cal. Jan. 24, 2022); *see, e.g.*, *Burch*, 400 F.3d at 679 ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis.") (citing *Swenson*, 876 F.2d at 687).

### 2. Analysis

Plaintiff contends the ALJ incorrectly found that her depression and anxiety amounted to non-severe impairments at Step Two of the evaluation. (Doc. 14 at 13). To reach this conclusion, Plaintiff contends the ALJ improperly rejected the opinions of Dr. Michiel and Mr. Moore. The Court will address each opinion in turn.

#### a. Medical Opinion Evidence Generally

Plaintiff's claim for benefits is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 404.1520c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

Recently, the Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

12

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

### b. Dr. Michiel's Opinion

In rejecting Dr. Michiel's opinion, the ALJ stated the following:

> The opinions offered by Ekram Michiel, M.D., the psychological consultative

13

>examiner are not persuasive. Dr. Michiel opined that the claimant had difficulty with simple job instructions, and marked difficulty relating to coworkers, supervisors and the public and marked limitation (Exhibit B15F). Dr. Michiel's findings are supported by his examination notes, the claimant's reports of paranoia and her poor performance on memory tasks. However, Dr. Michiel's examination findings are inconsistent with the claimant's own Function Report that does not indicate difficulty getting along with others or with understanding, following instructions of completing tasks (Exhibit B6E). Additionally, Dr Michiel's examination findings and opinions are inconsistent with the observations from other treatment providers who indicate that she is cooperative, oriented and with normal memory and symptoms reports that indicate that she denies feelings of depression or anxiety (Exhibits B25F and B18F).

(AR 29).

The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Michiel's opinion.  The ALJ found that while Dr. Michiel's findings supported his opinion, it was inconsistent with the longitudinal record.  Plaintiff contends the ALJ "strongly focused on benign objective findings, without accounting for the full scope of the actual findings of record . . . . As to the ALJ's notation that the opinions were not supported by numerous objective findings, this makes it evidence that the ALJ did not understand the inherently subjective nature of mental illness." (Doc. 14 at 13).  A review of the record reveals that the ALJ did not find that there was a *lack* of evidence to support Dr. Michiel's opinions, but rather, that other evidence *actively contradicted* Dr. Michiel's findings.  The two exhibits the ALJ cited include many instances where providers noted that Plaintiff was alert and oriented, with a normal mood and no focal deficit or confusion.  (AR 1379 [June 2018]; AR 1375 [September 2018]; AR 1371 [September 2019]; AR 1340 [December 2019]; AR 916 [January 2021]; AR 908 [February 2021]; AR 901 [March 2021]; AR [April 2021]; AR 893 [May 2021].  Similarly, she often denied being depressed with any stressors, and providers found she was alert and oriented, cooperative, with clear speech and no acute distress and that she was answering questions appropriately.  (AR 980-81 [March 2020]; AR 970-76 [April 2020]; AR 970-71 [May 2020]; AR 964-65 [June 2020]; AR 956-57 [July 2020]; AR 948-49 [August 2020]; AR 940-41 [September 2020]; AR 935-36 [October 2020]; AR 930-31 [November 2020]; AR 925-26 [December 2020]).

The ALJ also cited to Plaintiff's function report, where Plaintiff did not indicate she struggled to get along with others or follow instructions. (AR 29 (citing AR 386-93)). Plaintiff contends the ALJ mischaracterized the report, as Plaintiff states in the report that her daughter does her shopping, and that she has limited social interaction. (AR 389-90). This contention is unavailing. In the function report, Plaintiff indicated she spends time with others and she speaks with her mother on the phone twice per week. Plaintiff does not indicate anywhere that she struggles to interact with the public. For instance, she states she no longer goes dancing, but she attributes this change to the fact that she cannot stand or sit long with her chronic pain. (AR 390). Plaintiff's contentions largely suggest the ALJ should have come to a different conclusion when evaluating the evidence, but "[i]f the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." *Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

Accordingly, the ALJ's determination that Dr. Michiel's opinion was not persuasive is legally sufficient and supported by substantial evidence, and the ALJ did not err at Step Two for this reason.

### c. Mr. Moore's Opinion

In rejecting Mr. Moore's opinion, the ALJ stated the following:

> The opinions offered by Daniel Moore, PA-C are not persuasive (Exhibit B17F). Mr. Moore found that the claimant had limitations in memory, concentration, social interaction, and adaption that were much more than mild limitation; Mr. Moore also indicated that the claimant would miss more than four days of work per month. Mr. Moore provided his opinion by checkmarks. He indicated that he sees the claimant regularly and that she is diagnosed with bipolar [disorder]. There is no additional support for the opinions. The undersigned notes that, as with Dr. Michiel's opinions, these opinions are inconsistent with the record as a whole including the claimant own reports and with examination reports (Exhibits B25F and B18F).

(AR 29).

Likewise, the Court concludes that the ALJ properly evaluated the supportability and consistency of Mr. Moore's opinion. As the ALJ noted, Mr. Moore did not include any additional support for the opinions proffered in the report. (*See* 889-90). For instance, Mr. Moore notes that

15

1  Plaintiff will likely need to miss more than four days of work per month, but there is no
2  explanation as to why. (AR 890). Mr. Moore's opinion is a standardized form with almost no
3  exposition from Mr. Moore. At most, Mr. Moore indicated Plaintiff's prognosis was "good."
4  (AR 889). The ALJ appropriately discounted Mr. Moore's opinion as a "check-the-box" form
5  which did not explain the provider's findings. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir.
6  2012) ("We have held that the ALJ may permissibly reject check-off reports that do not contain
7  any explanation of the bases of their conclusions.") (*superseded on other grounds* by 20 C.F.R. §
8  416.920(a)). As with Dr. Michiel's opinion, the ALJ found Mr. Moore's opinion was contradicted
9  by other evidence in the record, and therefore, properly discounted the opinion (*supra*).
10  Accordingly, the ALJ's determination that Mr. Moore's opinion was not persuasive is
11  legally sufficient and supported by substantial evidence, and the ALJ did not err at Step Two for
12  this reason.

13  **C.    The ALJ Offered Sufficient Reasons to Discount Plaintiff's Subjective Complaints**

14  **1.    Legal Standard**

15  In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ
16  must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First,
17  the ALJ must determine whether the claimant has presented objective medical evidence of an
18  underlying impairment that could reasonably be expected to produce the pain or other symptoms
19  alleged. *Id*. The claimant is not required to show their impairment "could reasonably be expected
20  to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could
21  reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504
22  F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of
23  malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms
24  if they give "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has
25  explained:

26  > The ALJ may consider many factors in weighing a claimant's credibility, including
27  > (1) ordinary techniques of credibility evaluation, such as the claimant's reputation
   > for lying, prior inconsistent statements concerning the symptoms, and other
28  > testimony by the claimant that appears less than candid; (2) unexplained or

> inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

### 2. Analysis

Because the ALJ found Plaintiff's "medically determinable impairments reasonably could be expected to cause the alleged symptoms," (AR 26-27) the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.  Plaintiff contends the ALJ "failed to state a clear and convincing reason for rejecting Plaintiff's testimony as the ALJ was not permitted to discount Plaintiff's symptoms due to unsupportive objective medical evidence."  (Doc. 14 at 18).  The Court finds the ALJ properly discounted Plaintiff's subjective complaints.

Contrary to Plaintiff's assertions, the ALJ may discount Plaintiff's subjective complaints solely because they contradict the relevant medical evidence. *Woods v. Comm'r of Soc. Sec. (Woods I)*, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient.") (emphasis in original).  The ALJ noted that while Plaintiff reported using a cane and walker, examination notes

17

indicated she had a normal gait and her toe walking and heel walking were normal. (AR 27, citing Exhibit B20F/3)). Other notes indicated Plaintiff had good balance (AR 28, citing Exhibit B20F/6), and Plaintiff reported no difficulty walking as late as May 2021. (AR 28, citing Exhibit B18F/1). This inconsistency between Plaintiff's testimony and the record is another reason the ALJ may discount her subjective complaints. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1196 (9th Cir. 2004) (finding an ALJ may reject a claimant's allegations by pointing to "contradictions in the claimant's own testimony about [her] activities of daily living."). Lastly, the ALJ noted that Plaintiff's pain is effectively reduced with medication, which is relevant to Plaintiff's subjective complaints. *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (finding that impairments "that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); C.F.R. § 404.1529(c)(3)(iv) ("The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms," as well as any other treatments, are relevant to the evaluation of a claimant's alleged symptoms.). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017)). Thus, the Court concludes that the ALJ provided legally sufficient reason to reject Plaintiff's subjective complaints.

## V.     CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Shawndell James.

IT IS SO ORDERED.

Dated:   **June 7, 2024**                          /s/ *Sheila K. Oberto*
                                                            UNITED STATES MAGISTRATE JUDGE